IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF KANSAS

TERRY JAREMKO,

        Plaintiff,

    vs.                     **Case No. 10-1137-RDR**

ERISA ADMINISTRATIVE
COMMITTEE,

        Defendant.

_____

## MEMORANDUM AND ORDER

This is an action brought by the plaintiff pursuant to §
1132(a)(1) of the Employee Retirement Income Security Act of 1974
(ERISA).  Plaintiff claims that his pension benefits were
improperly denied by the ERISA Administrative Committee of the
Kellogg Company Pension Plan.[1]  This matter is presently before the
court upon cross-motions for judgment on the administrative record.
Having carefully reviewed the record as well as the arguments of
the parties, the court is now prepared to rule.[2]

I.

Jaremko began his employment at Sunshine Biscuits on August

_____

[1] Plaintiff has named the ERISA Administrative Committee as
the defendant in this action.  The defendant points out that the
proper party in this case is Kellogg Company Pension Plan.  The
court agrees.  See 29 U.S.C. § 1132(d)(1).  Nevertheless, the court
shall allow this action to proceed against the named defendant
because the court sees no prejudice to the defendant.

[2] The defendant has requested oral argument.  The court is not
persuaded that oral argument is necessary.

11, 1981 in Kansas City, Kansas.  He was an hourly employee and a participant in a retirement plan sponsored by Sunshine.  One of the provisions in the retirement plan was known as "Golden 80 retirement."  This provision entitled a participant to full pension benefits when the participant's age plus his years of continuous service equaled at least 80.  On either December 30, 1997 or January 3, 1998[3], Jaremko became an employee of the Retail Wholesale and Department Store Union (RWDSU), a union that had a contract with Sunshine Biscuits and Keebler.  The union contract between the parties indicated that "[a]ny employee elected as an officer of the Union shall be granted a leave of absence upon request of the Union and shall retain seniority during such leave." After he became an employee of the RWDSU, Jaremko has not received any compensation from Sunshine or its successors.  He was paid by the RWDSU for his work as a business agent.

Sunshine Biscuits was purchased by Keebler Company in 1996. Keebler Company was purchased by Kellogg Company on March 26, 2011. The provisions of the retirement plans stayed remarkably the same over the years, particularly the provisions related to the Golden 80 retirement.

Jaremko anticipated retirement as of September 30, 2009 at

---

[3] There is a dispute in the record whether plaintiff left his employment with Sunshine Biscuits to become a union business agent on December 30, 1997 or January 3, 1998.  The parties have agreed that this determination has no impact on the outcome of this action.

which time he would have been 52 years old.  He sought benefits
pursuant to the Golden 80 provisions of the pension plans.  His
appeal was denied.  He was granted 17 years of service--sixteen
years for his employment with Sunshine and Keebler, and one
additional year for being on a leave of absence after he left to
work for the RWDSU.  Other than the one year that was allowed for
being on leave of absence, he did not receive any years of service
for the period after he left the employment of Sunshine and
Keebler.  Accordingly, he was denied the application of the Golden
80 provision because he was 11 years short of meeting its
requirements.

II.

A denial of benefits covered by ERISA "is to be reviewed under
a de novo standard unless the benefit plan gives the administrator
or fiduciary discretionary authority to determine eligibility for
benefits or to construe the terms of the plan." Firestone Tire &
Rubber Co. v. Bruch, 489 U.S. 101, 115 (1989)).  Where the plan
gives the administrator discretionary authority, however, "we
employ a deferential standard of review, asking only whether the
denial of benefits was arbitrary and capricious." Weber v. GE
Group Life Assurance Co., 541 F.3d 1002, 1010 (10th Cir. 2008)).
Under this arbitrary and capricious standard, our "review is
limited to determining whether the interpretation of the plan was
reasonable and made in good faith." Kellogg v. Metropolitan Life

3

Ins. Co., 549 F.3d 818, 825-26 (10th Cir.2008)). "If, however, a plan administrator operates under an inherent or proven conflict of interest or there is a serious procedural irregularity in the administrative process, it is necessary to adjust the standard of review." Flinders v. Workforce Stabilization Plan of Phillips Petroleum Co., 491 F.3d 1180, 1189-90 (10th Cir. 2007).

Both parties agree that the plans here gave the administrator discretionary authority to determine eligibility for benefits and to construe the plan. Thus, the court would ordinarily apply an arbitrary and capricious standard of review. Plaintiff, however, argues that "procedural irregularities" warrant the application of a de novo standard of review. Plaintiff points to the following procedural irregularities: (1) the administrator failed to provide him with a copy of the administrative record when he requested it following the initial adverse determination; (2) the administrator obtained and relied upon new facts after he filed an administrative appeal and did not provide him with an opportunity to address the accuracy and reliability of those new facts; and (3) the administrator added documents including an affidavit with exhibits to the administrative record after the administrator issued its final denial. Plaintiff further argues that a de novo standard should be applied because the plan administrator operated with a conflict of interest which affected its decision.

The Tenth Circuit, in Kellogg, found procedural irregularity

4

warranting less deferential review where the plan administrator
failed to exercise his discretion within the ERISA time limits, and
the plaintiff's claim was therefore "deemed denied."  549 F.3d at
828.  Later, in LaAsmar v. Phelps Dodge Corporation Life,
Accidental Death & Dismemberment and Dependent Life Insurance Plan,
605 F.3d 789, 796-97 (10th Cir. 2010), the Circuit imposed de novo
review when administrative review was done (1) in a belated manner,
(2) outside ERISA mandated time limits, and (3) where the
administrator failed to offer a reasoned evaluation of evidence
submitted to satisfy initial objections.  These cases offer
instances where a change in standard of review may be proper.
However, to alter the standard of review, alleged procedural
irregularities must be "serious," as the Circuit has held that the
standard of review should not change if the plan administrator in
question was in "substantial compliance" with ERISA's regulatory
requirements.  Gilbertson v. Allied Signal, Inc., 328 F.3d 625, 635
(10th Cir. 2003).

    Jaremko sought pension benefits pursuant to the Golden 80
provisions in 2009.  His claim was denied.  He eventually appealed
to the Kellogg Company ERISA Sub-Committee on December 14, 2009.
His appeal was denied on January 28, 2010.  He was informed that he
had 60 days to appeal that decision to the Kellogg Company ERISA
Administrative Committee.  He then hired an attorney, Jack Shelton,
to represent him.  Mr. Shelton requested various documents on

February 12, 2010.   On March 16, 2010, Mr. Shelton sought an extension of time to file plaintiff's appeal.   He requested several documents to prepare the appeal.   Without waiting for a decision on his request for extension, Mr. Shelton filed the appeal on March 22, 2010.   Cindy Mullins, the manager for retirement plans for Kellogg Company, sent a letter to Mr. Shelton on March 25, 2010 stating:   "Since you have filed the appeal, we are assuming you no longer need the materials requested in your letter of February 12, 2010."   Mr. Shelton reiterated in a letter of April 2, 2010 that he still sought receipt of the documents.   On April 6, 2010 Ms. Mullins wrote Mr. Shelton and indicated that she was providing most of the documents that he requested.   She noted that she was unable to provide the "administrative record" that he requested because it would not be completed until the appeal process was final.

During the entire process, Jaremko and later his attorney raised the circumstances of Adrain Loomis.   Jaremko thought that his circumstances were similar to those of Mr. Loomis and a consistent decision would mean that he was entitled to Golden 80 retirement benefits.   Mr. Loomis had been an employee of Sunshine Biscuits and had left Sunshine in 1994 to become a union official. Jaremko has suggested Mr. Loomis ultimately received Golden 80 pension benefits from Sunshine that reflected his service as a union official.

On April 5, 2010 Ms. Mullins addressed this issue in an

executive summary to the ERISA Administrative Committee as follows:

> In addition to the information presented above, [Jaremko] indicates that another employee, Adrain Loomis, was employed by Sunshine Biscuits, Inc., became a union official and then retired; the same sequence of events as [Jaremko]. However, he was given Continuous Service for the period when he was a union official. This is based upon personal knowledge since he knew Mr. Loomis. We have confirmed that Mr. Loomis' pension benefit was calculated using all service from his date of hire August 28, 1961 to his termination date of December 31, 1995. Information from Tom Udell indicates that Mr. Loomis retired and then began his work with the Union. Our records do not indicate the period that he was a Union representative. However, the terms of the Plan were the same at that time as they are today regarding Continuous and Credited Service. If Tom's recollection is correct, it would seem the terms of the plan were administered in the same manner for Mr. Loomis as for [Jaremko].

In the final decision, the ERISA Administrative Committee resolved this matter by stating:

> Although Mr. Jaremko's appeal raises the pension benefit of a former Sunshine Biscuit employee named Adrain Loomis, the Plan Administrator has determined that an administrative error was made in the calculation of Mr. Loomis' benefit. Since the Plan provisions were correctly applied, the denial of Mr. Jaremko's claim for Continuous and Credited Service for January 3, 1998 through September 30, 2009, will not be overturned.

The administrative record includes an affidavit of Ms. Mullins. This affidavit was prepared on July 19, 2010. The affidavit addresses the factual background relating to the circumstances of Mr. Loomis. Ms. Mullins provides what she did and what she learned during her investigation of plaintiff's contention concerning Mr. Loomis. She indicates that all of the records she discovered during her investigation were submitted to the ERISA

Administrative Committee for review during plaintiff's appeal.  She further provides some information on the background of Mr. Shelton's request for documents prior to the appeal.

The court has thoroughly considered the alleged procedural irregularities.  The court is not persuaded that any of these "procedural irregularities" are serious.  The court finds that the plan administrator was in "substantial compliance" with ERISA's regulatory requirements.  In addition, to the extent that any procedural irregularities occurred, the court is not persuaded that plaintiff suffered any prejudice.  The court believes that plaintiff was provided both a full and fair review of his claim. The court shall provide some additional comments on each of the claims made by plaintiff.

The court does not find that plaintiff was denied any documents or records relied upon by the ERISA Administrative Committee.  Kellogg Company provided all of the documents requested by plaintiff.  There was mis-communication concerning the timing of plaintiff's request, but every effort was made to provide the materials when it was understood that they were still desired by plaintiff.  The ERISA regulations require that an ERISA claimant be "provided, upon request and free of charge, reasonable access to, and copies of, all documents, records, and other information relevant to the claimant's claim for benefits."  29 C.F.R. § 2960.503-1(h)(2).  The record suggests that all of plaintiff's

8

requests, except for his request for the "administrative record," were met.  The court finds nothing in the case law or regulations that require the production of an "administrative record."  Such a record, as pointed out by Kellogg Company, is only produced after the resolution of the appeal.  Plaintiff did receive a copy of the administrative record for the purposes of this litigation.

Plaintiff has also suggested that the administrator obtained new evidence during the appeal and he had no opportunity to address the accuracy and reliability of these new facts.  This argument concerns the circumstances of Mr. Loomis.  Plaintiff asserts that the administrator's use of new data on Mr. Loomis, without providing an opportunity for him to address it, constituted a procedural irregularity.  The court cannot agree with plaintiff's assessment of what occurred or his conclusion.  Plaintiff raised the issue of Mr. Loomis early in his request for benefits.  Kellogg Company researched that issue and concluded that the circumstances of Mr. Loomis did not provide any support for plaintiff's claim. Plaintiff had every opportunity to provide additional information on Mr. Loomis.  In fact, plaintiff had the burden of developing the record on this issue.   Plaintiff failed to provide any additional information on his claim that Mr. Loomis received continuous service for his pension calculation for the time he served as a union agent.  The documentation of the companies did not support the facts alleged by plaintiff relating to Mr. Loomis.  Thus, the

court is not persuaded that any procedural irregularity occurred in the evaluation of plaintiff's claim concerning Mr. Loomis.

Plaintiff has further argued that the inclusion of Ms. Mullin's affidavit in the administrative record is a procedural irregularity because it constituted the addition of new documents after the final denial. Again, the court fails to find any support for plaintiff's contention. The affidavit contains no new information. Rather, it simply provides an account of Ms. Mullin's investigation during plaintiff's claim and attaches the various documents that were relied upon by the administrative committee. The court does not find that the inclusion of this affidavit constituted a "serious" procedural irregularity. See, e.g., Baker v. Tomkin Industries, Inc., 339 F.Supp.2d 1177, 1182 (D.Kan. 2004).

Finally, plaintiff has argued that the plan administrator operated with a conflict of interest that affected its decision. Plaintiff contends that his claim was not processed independently of the Kellogg Company. He points to a number of Kellogg Company employees who were involved in the decision-making process. He also asserts that there is a "dual-role conflict of interest" because the Kellogg Company is both the insurer and the administrator of the Plan.

The court finds no merit to the plaintiff's arguments on conflict of interest. Kellogg Company is not an insurer of a plan who pays claims from its own coffers for every claim that it

approves.  Rather, claims are paid by the pension plan, which is a
trust fund that is separate from and administered independently of
Kellogg Company.

Plaintiff has also suggested that there was a conflict of
interest because Kellogg employees were consulted during the
evaluation of the claim.  He notes that a Kellogg's officer, Thomas
Udell, discussed his claim with the individuals who were charged
with making the initial determination.  Plaintiff has failed to
cite any statute, regulation or case law that precludes a claims
administrator from discussing a claim with a plan's sponsor's
employees or officers when evaluating a claim.  The court fails to
find that this action constitutes a conflict of interest.

Having found no serious procedural irregularities or conflict
of interest, the court shall review the decision of the plan
administrator to determine if it was arbitrary and capricious.  The
court must affirm the decision of the Kellogg plan unless it is not
grounded on any reasonable basis.

III.

The court shall turn to the language of the plan on the Golden
80 provision.  The section of the Kellogg plan mirrors the language
of the prior Keebler plan, which mirrors the provisions of the
Sunshine plan.  The early retirement date for Golden 80 locations,
which includes Jaremko's Kansas City plant, is as follows:

(C)   A Sunshine Hourly Participant's "Early
Retirement  Date" shall be determined as follows:

11

.     .     .     .     .

(ii)   Golden 80 Locations.   A Sunshine Hourly
Participant who is employed at Sunshine's Columbus,
Kansas City, Oakland or Sayreville locations ("Golden 80
Locations") or an Employee who had been employed at a
Golden 80 Location and was a Sunshine Hourly Participant
prior to transferring to employment in a non-union job
classification, whose age attained as of his or her last
birthday plus his or her years of Continuous Service
total at least eighty (80) may retire at any time prior
to his or her Normal Retirement Date without an early
commencement reduction. . . .

Continuous Service is defined under the Kellogg Plan, which is

substantively identical to the language in the Sunshine Plan and

Keebler Plan, as follows:

(c)   The term "Continuous Service" means the number of
years and a fraction of a year, counting each part of a
month as 1/12th of a year, in the period beginning with
the Employee's date of employment with Sunshine and
ending with the "severance from service date," which,
subject to the following, is the date of retirement or
other termination of employment with the Employer or
Related Companies.

       (i)   In the case of an absence from
service with Sunshine or an Employer other
than due to retirement or termination, whether
or not compensated or authorized, the
severance from service date shall not occur
until the earliest of: (1) the expiration of
the absence, (2) one year after the absence
commenced and (3) the date of retirement or
termination.

              .     .     .     .     .

       (iii)   If a severance from service date
occurs and the Participant resumes active
employment with an Employer or Related Company
within twelve (12) months of the severance
from service date, prior Continuous Service
shall be reinstated and the period of

12

severance shall be counted in Continuous
Service.

Employer and employee are defined in the Kellogg plan as
follows:

2.19  <u>Employee</u>  The term "Employee" means any common
law employee of an Employer or Related Company who is
treated by the Employer or Related Company as its
employee for purposes of employment taxes and wage
withholding taxes under its payroll practices; provided,
however, that Employee shall include Leased Employees (as
defined under Section 4.7 of the Plan) to the extent
required under Code Section 414(n).

2.20  <u>Employer</u>  The term "Employer" refers to the
(a) Company, but only to the extent that it is the
employer of any Covered Employees and (b) any
Participating Employer. Refer to Supplement 1, Appendix
A for a list of Participating Employers. Notwithstanding
the foregoing, Employer shall include any Related Company
that has not adopted the Plan but that employs an
Eligible Nonresident Employee (as such term is defined
under subsection 2.11(f) above), and only with respect to
such Eligible Nonresident Employee. Collectively, these
entities may be referred to as the "Employers." Whenever
this Plan refers to the Employer in a context referring
to the employer-employee relationship (rather than to the
role of the Company as sponsor of the Plan), Employer
shall refer specifically to the Related Company,
affiliate or subsidiary that is the employer of the
affected employee(s).

Plaintiff relies upon three points in support of his position
that his claim for Golden 80 retirements was incorrectly denied:
(1) the language contained in the summary of the Sunshine Plan; (2)
the Plan was improperly amended without notice to him; and (3) the
Plan Administrator has not interpreted the Plan in a consistent
manner.

Plaintiff begins by pointing to certain language contained in

13

the summary of the Sunshine Plan ("SPD" or "summary plan description"). Specifically, plaintiff notes the following provisions:

### "GOLDEN 80" RETIREMENT

You may elect to retire on the first day of any month once your age plus years of Continuous Service total at least 80.

.     .     .     .     .

### WHAT CONTINUOUS SERVICE MEANS

Generally, your continuous service starts on the first day of the month in which you are hired and ends on the last day of the month in which you retire, terminate your employment or die.

.     .     .     .     .

### WHAT CREDITED SERVICE MEANS

Credited Service means the period of your continuous service up to your retirement date for which you worked at Sunshine Biscuits, Inc.

Plaintiff contends that this language indicates that he is entitled to "Continuous Service" because retirement under the SPD is keyed to "termination," not a "leave of absence." He suggests that on April 14, 2009, when he inquired about his pension benefits, he had not retired, been terminated, or died. Therefore, he argues he was entitled to a period of "Continuous Service" from August 1981 to at least the date of his inquiry.

In response, the defendant notes that the actual language of the plans differs from the language contained in the summary. The defendant argues that the language of the plans must control.

Plaintiff's reliance on the SPD for the Sunshine Plan is

14

misplaced.  The document itself informs the reader that it is only a summary and that the details of the Plan are found in the text of the Plan:

> This booklet summarizes the benefits of the Sunshine Biscuits, Inc. Pension Plan.  While all the essential points are explained, the booklet does not attempt to cover all the details.  These can be found in the Plan text which will govern if any questions arise as to its administration or interpretation.

In CIGNA Corp. v. Amara, 131 S.Ct. 1866 (2011), the Supreme Court specifically considered whether a district court could enforce terms in an SPD where those terms conflicted with the terms in governing plan documents.  The Court determined that the terms of the SPD are not enforceable when they conflict with governing plan documents.  131 S.Ct. at 1878; see also Eugene S. v. Horizon Blue Cross Blue Shield of New Jersey, 663 F.3d 1124, 1131 (10th Cir. 2011).

The SPD makes clear that it merely summarizes the benefits of the plan.  The SPD states emphatically that the text of the plan controls if there are any questions about its interpretation.  The SPD uses the word "generally" at the beginning of the definition of "WHAT CONTINUOUS SERVICE MEANS."  The use of this term should have provided guidance that the SPD was merely summarizing the information that was contained in another location.  The plan documents support the defendant's position that the decision to deny plaintiff Golden 80 retirement benefits was not arbitrary or capricious.  The definition of employee in the plans does not

15

include an employee of the RWDSU.  The plans define "Continuous

Service" as the "period beginning with the Employee's date of

employment and ending with the 'severance from service date.'"  In

each of the plans, the "severance from service date" includes the

date of retirement, termination or employment, or

> [i]n the case of an absence from service with Sunshine or
> an Employer other than due to retirement or termination,
> whether or not compensated or authorized, the severance
> from service date shall not occur until the earliest of:
> (1) the expiration of the absence; (2) one year after the
> absence commenced, and (3) the date of retirement or
> termination.

Plaintiff has admitted that he took a leave of absence and

never returned to work.  During that period, he worked for the

RWDSU.  Since he did not return to work, the Plan language is

unambiguous.  He was entitled to up to one year of additional

Continuous Service for the period of employment with the RWDSU that

was granted to him following his appeal.  Thus, the court cannot

find that the decision of the defendant was arbitrary or

capricious.

The court also finds no merit to plaintiff's argument that

Supplement 7 in 2003 changed the Kellogg plan without notice to the

beneficiaries of the changes.  This contention is based upon

plaintiff's belief that the Kellogg plan changed or amended the

language of the SPD provided by Sunshine Biscuits.  Once again, we

note that there was no amendment to the Kellogg plan that triggered

the notice requirements of ERISA.  Rather, plaintiff is relying on

16

the SPD, which specifically states that it only summarizes the plan language. Here, the plan language controls and there was no amendment or change to it concerning the Golden 80 retirement provisions.

Finally, the court considers plaintiff's contention that the plan was interpreted inconsistently. This argument arises from the treatment of Mr. Loomis. Plaintiff has suggested that Mr. Loomis received continuous service after he became a union business agent. The court finds insufficient evidence in the record to support the plaintiff's position. The research performed by Kellogg Company showed a different story, and plaintiff failed to provide any sworn testimony from Mr. Loomis to the contrary. The record shows that Mr. Loomis was employed by Sunshine or Keebler from 1961 to 1995. At that time, he became a business agent for the union. Plaintiff provided a document showing that Mr. Loomis became a business agent for the union on or about October 31, 1994. If he applied for his pension effective December 31, 1995, then he should not have received Continuous Service for the months of November and December 1995 because the Plan provided for only a year of continuous service following a leave of absence. In its final decision, the ERISA Administrative Committee of the Kellogg Plan noted that an administrative error occurred in the calculation of Mr. Loomis' benefit, not a different interpretation of the plan language. The error was made in not knowing the date of the beginning of the

17

leave of absence. The court fails to find that this determination by the Administrative Committee was a different interpretation of the Plan language. Even if a two-month error was committed, plaintiff is not entitled to an additional eleven years of Continuous Service. There is no support for this position, either factually or legally.

IV.

In sum, the court shall grant judgment to the defendant. The court finds that the decision of the defendant to deny plaintiff pension benefits was not arbitrary or capricious.

**IT IS THEREFORE ORDERED** that defendant's motion for judgment on the administrative record (Doc. # 34) be hereby granted and plaintiff's motion for summary judgment (Doc. # 32) be hereby denied. Judgment shall be entered for the defendant and against the plaintiff.

**IT IS SO ORDERED.**

Dated this 11th day of June, 2012 at Topeka, Kansas.

                    s/Richard D. Rogers
                    United States District Judge