FILED
United States Court of Appeals
Tenth Circuit

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

**May 8, 2013**

Elisabeth A. Shumaker
Clerk of Court

---

TERRY JAREMKO,

    Plaintiff-Appellant,

v.

ERISA ADMINISTRATIVE
COMMITTEE,

    Defendant-Appellee.

No. 12-3179
(D.C. No. 6:10-CV-01137-RDR-KGS)
(D. Kan.)

---

### ORDER AND JUDGMENT[*]

---

Before **LUCERO**, Circuit Judge, **PORFILIO**, Senior Circuit Judge, and **MATHESON**, Circuit Judge.

---

Terry Jaremko ("Jaremko") appeals the district court's decision to grant defendant ERISA Administrative Committee's motion for judgment on the administrative record. Mr. Jaremko brought his claims pursuant to 29 U.S.C. § 1132(a)(1) of the Employee Retirement Income Security Act of 1974 (ERISA). Exercising jurisdiction under 28 U.S.C. § 1291, we affirm.

---

[*] After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

I. **BACKGROUND**

Mr. Jaremko began his employment at Sunshine Biscuits on August 11, 1981. He participated in the company-sponsored retirement plan, which included a provision called "Golden 80." Golden 80 provides full pension benefits when the participant's age plus years of continuous service equals eighty or more.

On January 3, 1998, after approximately sixteen years of continuous service, Mr. Jaremko became an officer at the Retail Wholesale and Department Store Union ("RWDSU"), a union then having a contract with Sunshine, which subsequently was purchased by Keebler, which in turn was purchased by Kellogg.[1] The union contract said that any employee-elected officer at RWDSU would be granted a leave of absence from the company and would retain seniority during such leave.

In 2009, after working at RWDSU for eleven years, Mr. Jaremko sought to retire from Kellogg with full benefits under the Golden 80 provision. Kellogg's ERISA administrator granted Mr. Jaremko only seventeen years of service, which did not qualify him for Golden 80. The administrator pointed to a clause in Golden 80 that allows reinstatement of "continuous service" for an employee on leave only if he resumes employment within twelve months of leaving. Mr. Jaremko never resumed

---

[1] The relevant contract and retirement provisions have remained the same since Mr. Jaremko began his employment at Sunshine in 1981. The employer, having changed ownership from Sunshine to Keebler to Kellogg during the relevant time period, will be called Kellogg for the purpose of simplicity.

- 2 -

employment with Kellogg after leaving in 1998 to work for the union, and he therefore received continuous service credit only for the first year he was on leave.

Mr. Jaremko appealed this decision to the company's ERISA Administrative Committee ("Committee"). Among other arguments, Mr. Jaremko asserted that he was entitled to the same service calculation that Adrian Loomis, a former Kellogg employee, received. Like Mr. Jaremko, Mr. Loomis took a leave of absence to work as a union officer for over a year. Unlike Mr. Jaremko, and despite his multi-year absence, Mr. Loomis received continuous service credit for the entire time he worked for the union and received full pension benefits upon retirement. The Committee denied Mr. Jaremko's appeal in April 2010. Mr. Jaremko then filed suit in the district court, which granted judgment on the administrative record to the Committee. Mr. Jaremko now appeals.

## II. **DISCUSSION**

Mr. Jaremko's various arguments boil down to whether Mr. Jaremko should have been granted full pension benefits under the Golden 80 provision of his retirement plan.

### A. *Standard of Review*

We review a denial of ERISA plan benefits under an arbitrary and capricious standard if the plan gives the administrator "discretionary authority to determine eligibility for benefits or to construe terms of the plan," as the Kellogg plan does. *See Kellogg v. Metro. Life Ins. Co.*, 549 F.3d 818, 825 (10th Cir. 2008) (internal

quotation marks omitted). De novo review may be appropriate if the determination process was not in substantial compliance with ERISA regulations. *See Hancock v. Metro. Life Ins. Co.*, 590 F.3d 1141, 1152 (10th Cir. 2009).

Mr. Jaremko argues procedural error for the limited purpose of seeking a de novo standard of review.[2] He contends the administrative review process contained substantial procedural defects warranting de novo review. Both Mr. Jaremko and the Committee devote considerable attention in their briefing to Mr. Jaremko's allegations of procedural error. But even applying a de novo standard, we conclude the administrator did not err in denying Mr. Jaremko Golden 80 benefits.

### B. *Golden 80 Eligibility*

#### 1. **The SPD and the Plan**

Mr. Jaremko contends that the Summary Plan Description ("SPD"), which summarizes the pension plan's terms, should be enforced over the terms of the full pension plan ("Plan") itself. Because the SPD states "continuous service" ends only upon retirement, termination, or death, Mr. Jaremko contends he lacked notice that the Plan states continuous service may be broken by taking leave. In other words, he asserts that the SPD and the Plan conflict and that the plan administrator should not

---

[2] Even if he were arguing the alleged procedural errors warrant reversal and remand, that argument would be unavailing because he has not attempted to show prejudice. *See DiGregorio v. Hartford*, 423 F.3d 6, 16-17 (1st Cir. 2005) ("To be entitled to a remand, [the plaintiff] must show prejudice in a relevant sense."); *see also Brimer v. Life Ins. Co. of North America*, 462 F. App'x 804, 809 (10th Cir. 2012) ("courts can require a showing of prejudice due to an ERISA violation as a prerequisite to ordering a remand.").

be permitted to deny full benefits because Mr. Jaremko could reasonably have believed the SPD actually was the Plan. We disagree.

First, the SPD and the Plan do not conflict. The SPD states that, "generally," continuous service ends when a participant retires, terminates his employment, or dies. The Plan contains a more detailed definition of "continuous service." It notes that continuous service may be severed when an employee is absent for reasons other than retirement or termination. In such cases, severance occurs one year after the absence commenced.[3] The SPD, as its title indicates, provides a basic summary. The Plan describes what happens in circumstances like Mr. Jaremko's leave of absence. Had the SPD fully described each provision and exception included in the Plan, it would not be a "summary" description.

Second, even if the SPD could be read as conflicting with the Plan, the Plan's terms would control. The Supreme Court's decision in *CIGNA Corp. v. Amara* held that SPDs should not be enforced over the terms of a plan. 131 S. Ct. 1866, 1877 (2011) (noting that if SPD terms were enforced, plan administrators might use more complex language in SPDs and thereby frustrate their purpose, which is to provide "clear, simple communication"). In *Eugene S. v. Horizon Blue Cross Blue Shield of New Jersey*, 663 F.3d 1124 (10th Cir. 2011), we interpreted *Amara* as standing for

---

[3] The Plan also provides that "[i]f a severance from service date occurs and the person resumes active employment with the Employer or an Affiliate before incurring a one-year period of severance, prior Continuous Service shall be reinstated and the period of severance shall be counted in Continuous Service." Aplt. App., Vol. 2 at 188.

the proposition that "the terms of [an] SPD are not enforceable when they conflict with governing plan documents." *Id.* at 1131.

Finally, we are not convinced that a reasonable person would understand the SPD to be the Plan. The SPD states that it is only a summary of the Plan and "does not attempt to cover all the details" of the Plan. Aplt. App., Vol. 2 at 92. It further notes that the Plan text "will govern if any questions should arise as to its administration or interpretation." *Id.* Further, the SPD states that retirement, termination, or death only "generally" end continuous service under the Plan. The word "generally" should have indicated to Mr. Jaremko that other circumstances can end continuous service under the Plan. The Plan was not improperly administered in this case.

2. **Mr. Loomis**

Mr. Jaremko contends that the Plan was interpreted inconsistently because Mr. Loomis received full pension benefits despite having a nearly identical service history as Mr. Jaremko. Mr. Jaremko argues that because Mr. Loomis was credited continuous service years based on a different interpretation of the Plan, Mr. Jaremko should therefore be entitled to the same interpretation.

Kellogg credited Mr. Loomis with continuous service from 1961 until 1995 despite his apparently having worked as a union official from 1977 to 1980 and again in 1994. Under the Plan, Mr. Loomis's leave from 1977 to 1980 should have severed

the "continuous service" period and made him ineligible for full benefits, just as Mr. Jaremko's union service leave did for him.

Rather than Kellogg's having interpreted the plan differently as to Mr. Loomis and Mr. Jaremko, it appears from the record that Mr. Loomis's plan administrator was not aware of Mr. Loomis's leave as a union official when his service was calculated. The Committee concluded that Mr. Jaremko was not entitled to the same benefits as Mr. Loomis because Mr. Loomis's Golden 80 benefits were awarded based on factual error. Mr. Jaremko argues that this conclusion is based on speculation, but the evidence indicates that the plan administrator did not have a record of Mr. Loomis's leave of absence when calculating his benefits.

The record indicates that Mr. Jaremko's and Mr. Loomis's pension benefits were evaluated under the same standards. The outcomes were different because Mr. Loomis's record before the plan administrator erroneously lacked reference to his leave period, while Mr. Jaremko's leave period was included. Applying the adage that two wrongs do not make a right, we conclude that just because Mr. Loomis may have been granted full benefits in error does not mean Mr. Jaremko should be granted the same. Mr. Jaremko's administrator credited his service by applying the express terms of the Plan. And under those terms, Mr. Jaremko was not eligible for Golden 80. The administrator did not err in denying his claim.

## III.  **CONCLUSION**

The judgment of the district court is affirmed.

                              Entered for the Court,


                              Scott M. Matheson, Jr.
                              Circuit Judge

# UNITED STATES COURT OF APPEALS
# FOR THE TENTH CIRCUIT
# OFFICE OF THE CLERK

Byron White United States Courthouse
1823 Stout Street
Denver, Colorado 80257
(303) 844-3157

| | | |
|---|---|---|
| Elisabeth A. Shumaker<br>Clerk of Court | May 08, 2013 | Douglas E. Cressler<br>Chief Deputy Clerk |

Mr. Jack Shelton
Jack Shelton, Attorney
608 North Broadway
Wichita, KS 67214

**RE:**     **12-3179, Jaremko v. ERISA Administrative Committee**
        Dist/Ag docket: 6:10-CV-01137-RDR-KGS

Dear Counsel:

Enclosed is a copy of the order and judgment issued today in this matter. The court has entered judgment on the docket pursuant to Fed. R. App. P. Rule 36.

Pursuant to Fed. R. App. P. Rule 40, any petition for rehearing must be filed within 14 days after entry of judgment. Please note, however, that if the appeal is a civil case in which the United States or its officer or agency is a party, any petition for rehearing must be filed within 45 days after entry of judgment. Parties should consult both the Federal Rules and local rules of this court with regard to applicable standards and requirements. In particular, petitions for rehearing may not exceed 15 pages in length, and no answer is permitted unless the court enters an order requiring a response. If requesting rehearing en banc, the requesting party must file 18 paper copies with the clerk, in addition to satisfying all Electronic Case Filing requirements. *See* Fed. R. App. P. Rules 35 and 40, and 10th Cir. R.35 and 40 for further information governing petitions for rehearing.

Please contact this office if you have questions.

Sincerely,

Elisabeth A. Shumaker
Clerk of the Court

cc: Mark S. Allard

EAS/na